**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| William Louis Huff,<br><br>    Petitioner,<br><br>v.<br><br>David Shinn, *et al.*<br><br>    Respondents. | No. CV-19-0251-TUC-EJM<br><br>**ORDER** |

  Currently pending before the Court is Petitioner William Louis Huff's *pro se* Amended Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody (Non-Death Penalty) ("Amended Petition") (Doc. 32). Respondents have filed an Amended Answer to Amended Petition for Writ of Habeas Corpus ("Amended Answer") (Doc. 40), and Petitioner replied (Doc. 41). The Amended Petition (Doc. 32) is ripe for adjudication.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

  In its April 6, 2020 Order (Doc. 21), this Court provided a detailed background of Petitioner's original plea and sentencing, ongoing filings in the state court, as well as federal court proceedings. The Court stayed this proceeding to allow resolution of Petitioner's then pending proceeding in the Cochise County Superior Court. *See* Order 4/6/2020 (Doc. 21). Upon resolution of that action, Petitioner filed his Amended Petition (Doc. 32) and alleged five grounds for relief.

. . .

### A. *Revocation Giving Rise to the Amended Petition*

On January 4, 2016, Petitioner was released to home arrest. *See* Arizona Department of Corrections Rehabilitation & Reentry ("ADCRR") Inmate Datasearch, *available at* https://corrections.az.gov/public-resources/inmate-datasearch (search last name "Huff," first initial "W") (last visited on September 27, 2022); *see also* Amended Answer (Doc. 40), Arizona Department of Corrections ("ADOC") Case Supervision Summ. for William L. Huff (Exh. "M") (Doc. 40-1). On November 26, 2018, ADOC issued a warrant for Petitioner's arrest, due to a violation of Arizona Condition of Supervision #12(B). Amended Answer (Doc. 40), ADOC Warrant of Arrest, No. 2018W3397 (Exh. "M") (Doc. 40-1). Petitioner was taken into custody and returned to ADOC. *Id.*, ADOC Request for Warrant of Arrest, No. 2018W3397 (Exh. "M") (Doc. 40-1).

Petitioner obtained private counsel to represent him during the hearing before the Arizona Board of Executive Clemency ("ABEC"). *Id.*, Ltr. from Kielsky to ABEC 12/19/2018 (Exh. "O") (Doc. 40-1). On December 31, 2018, Petitioner received a notice of hearing regarding revocation of his home arrest. *Id.*, ABEC Not. of Bd. Hr'g (Exh. "P") (Doc. 40-1). On this same date, Petitioner waived the fifteen (15) day notification requirement. *Id.* ADOC Inmate Ltr. 12/31/2018 (Exh. "Q") (Doc. 40-1). On January 9, 2019, ABEC found Petitioner violated the terms and conditions of his supervision and revoked his home arrest. Amended Answer (Doc. 40), ABEC Home Arrest Revocat. Viol. Hr'g Results (Exh. "R") (Doc. 40-1).

### B. *Cochise County Superior Court Proceedings*

On June 20, 2019, Petitioner filed a Petition for Post-Conviction Relief ("PCR") in the Cochise County Superior Court asserting that he was "[b]eing held beyond the term of sentence or after parole or probation ha[d] been unlawfully revoked." Limited Answer (Doc. 15), *State v. Huff*, No. 07232, Pet. for PCR (Cochise Cnty. Super. Ct. June 20, 2019) (Exh. "A") (Doc. 15-1). Petitioner indicated that he was not "challenging the legitimacy of his conviction, only seeking relief from an imprisonment which may be excessive, under

the Guidelines and terms established by Copper Time Laws of 1967." *Id.*, Exh. "A" at 7.[1] Petitioner alleged that "[o]n December 9, 2019[,] the Petitioner discovered on a Computation, he was charged with murder in the first degree instead of the charge he was convicted of." *Id.*, Exh. "A" at 9. Petitioner argued that as a result, the ABEC violated the Ex Post Facto Clause by retroactively applying Sections 13-4401 and 13-905, Arizona Revised Statutes. *Id.* Plaintiff sought "modification of his sentence from an indeterminate term to a determinant number of years." *Id.*, Exh. "A" at 10.

On July 18, 2019, the State responded to Petitioner's PCR petition and urged that his challenge to a parole revocation was not within the scope of Rule 32, Arizona Rules of Criminal Procedure. Amended Answer (Doc. 40), State's Response to Pet. for PCR (Exh. "S") (Doc. 40-1) at 25. The State further asserted that the proper means for review of an ABEC decision was by a special action. *Id.*, Exh. "S" at 25–26. On November 6, 2019, the Rule 32 court dismissed Petitioner's PCR petition. *Id.*, *State v. Huff*, No. CR07232, Order (Cochise Cnty. Super. Ct. Nov. 6, 2019) (Exh. "T") (Doc. 40-1). The Rule 32 court observed that "[a]ny claims related to revocation of parole or the denial of any re-admission to parole are not cognizable in a post-conviction relief proceeding." *Id.*, Exh. "T" at 29.

On December 19, 2019, Plaintiff filed a Petition for a "Special Action" Review for Modification of Sentence in the Arizona Court of Appeals. *Id.*, *State v. Huff*, No. 2 CA-SA 2019-0068, Pet. for Special Action (Ariz. Ct. App. Dec. 19, 2019) (Exh. "U") (Doc. 40-1). Plaintiff asserted that although he was not challenging his conviction, he sought modification his "sentence, which is excessive, and under the current scheme, maybe unconstitutional, and violates the Defendant's Sixth Amendment" rights. Amended Answer (Doc. 40), Exh. "U" at 31–32. Plaintiff argued that because the facts underlying his sentence were determined by a judge, they violated *Blakely*.[2] *Id.*, Exh. "U" at 32. Plaintiff also urged that the forty (40) year sentence that he received for second degree

---

[1] Unless otherwise noted, page citations refer to the CM/ECF page number for ease of reference.

[2] *Blakely v. Washington*, 542 US. 296 (2004).

murder, exceeds the statutory maximum sentence. *Id.*, Exh. "U" at 32–34. Regarding the November 26, 2018 home arrest violation, Plaintiff stated that "he takes accountability, even though he was in full compliance, he did not fully explain the parameters of his conditions to his fiancé, who allowed family members inside of his apartment with a minor, only to be discovered by the P.O.s." *Id.*, Exh. "U" at 35.

On December 23, 2019, the appellate court directed Petitioner to "file a copy of the recent ruling from the Cochise County Superior Court[,]" which he was challenging. *Id.*, *State v. Huff*, No. 2 CA-SA 2019-0068, Order (Ariz. Ct. App. Dec. 23, 2019) (Exh. "V") (Doc. 40-1). In early January 2020, Plaintiff filed the November 6, 2019 Order from Cochise County Superior Court, as well as other documents. Amended Answer (Doc. 40), Suppl. 1/2/2020 (Exh. "W") (Doc. 40-1) & Pet. for Special Action Submission of Ct.'s Ruling and Additional Exhs. 1/6/2020 (Exh. "X") (Doc. 40-1). On January 7, 2020, the Arizona Court of Appeals declined jurisdiction of Petitioner's special action petition. *Id.*, *State v. Huff*, No. 2 CA-SA 2019-0068, Order (Ariz. Ct. App. Jan. 7, 2020) (Exh. "Y") (Doc. 40-1). On February 10, 2020, following expiration of the time to file a petition for review with the Arizona Supreme Court, the appellate court issued its mandate. *Id.*, *State v. Huff*, No. 2 CA-SA 2019-0068, Mandate (Ariz. Ct. App. Feb. 10, 2020) (Exh. "Z") (Doc. 40-1).

On February 24, 2020, Petitioner filed a PCR Notice in Cochise County Superior Court. *Id.*, *State v. Huff*, No. 7232, Not. Requesting PCR (Cochise Cnty. Super. Ct. Feb. 24, 2020) (Exh. "AA") (Doc. 40-1). Petitioner alleged that the failure to file a timely notice was not his fault, and there had been a significant change in the law that would probably overturn his sentence. *Id.*, Exh. "AA" at 68. On the same date, Petitioner also filed a motion for special action with the state court. Amended Answer (Doc. 40), *State v. Huff*, No. 7232, Mot. for Special Action Review and Modification of Sentence Due to Court Error, Rule 33.1(c) (f) (g) (Cochise Cnty. Super. Ct. Feb. 24, 2020) (Exh. "BB") (Doc. 40-1). Petitioner asserted that his sentence was "unconstitutional and violates the Sixth Amendment because issues of disproportionalities, excessiveness, and . . . imposed by

sentencing judge[.]" *Id.*, Exh. "BB" at 70.  Petitioner urged that his plea agreement did not mandate that he had to serve his entire minimum sentence before he was eligible for parole. *Id.*, Exh. "BB" at 71.  Petitioner asserted that certain "authority figures" want to keep him incarcerated due to bad press arising from another inmate who committed a violent crime while on parole.  *Id.*, Exh. "BB" at 71.  Petitioner alleged that these "authority figures" conspired with ADOC "to corrupt any possibility of Mr. Huff being paroled."  *Id.*, Exh. "BB" at 71.  Petitioner further argued that because the facts upon which his sentence is based were found by a judge instead of a jury, they violate his Sixth Amendment rights. *Id.*, Exh. "BB" at 72 (citing *United States v. Booker*, 543 U.S. 220 (2005); *Blakely v. Washington*, 542 U.S. 296 (2004); *Apprendi v. New Jersey*, 530 U.S. 466 (2000)). Petitioner also argued that current Arizona statutes "identify a minimum of 15 years and a maximum of 25 years" for second degree murder.  Amended Answer (Doc. 40), Exh. "BB" at 73 (citing A.R.S. §§ 13-710, 13-1104).

On April 11, 2020, the Rule 33 court treated the filing as a PCR petition.  *Id.*, *State v. Huff*, No. CR7232, Order (Cochise Cnty. Super. Ct. Apr. 11, 2020) (Exh. "CC") (Doc. 40-1).  The Rule 33 court observed that Petitioner's 2019 PCR petition "sought essentially the same relief requested in the current petition[,] [and] . . . was denied."  *Id.*, Exh. "CC" at 84.  The Rule 33 court further observed that "[i]t appears that Defendant continues to be eligible for parole."  *Id.*  As such, the Rule 33 court found Petitioner's claims "precluded pursuant to Rule 33.2(a)."  *Id.*

On April 20, 2020, Petitioner filed a Petition for Modification of Sentence Amended Supplement Indeterminent [sic] Sentence, Rule 33.1(c) (f) (g) in Cochise County Superior Court.  Amended Answer (Doc. 40), *State v. Huff*, No. CR7232, Pet. for Mod. of Sent. Amended Suppl. Indeterminant Sent. R. 33.1(c) (f) (g) (Cochise Cnty. Super. Ct. Apr. 20, 2020) (Exh. "DD") (Doc. 40-1).  Petitioner urged that his sentence was disproportionate, excessive, and in violation of the Sixth Amendment.  *Id.*, Exh. "DD" at 87.  Petitioner reiterated his arguments regarding the disparity between his sentence and the current sentencing scheme for second degree murder, as well as his *Booker* argument.  *Id.*, Exh.

"DD" at 88–91. Petitioner also argued a violation of his equal protection rights. *Id.*, Exh. "DD" at 90. Additionally, Petitioner challenged the judge's conduct. *Id.*, Exh. "DD" at 91–94. Finally, Petitioner asserted he had "new significant information" and submitted an undated, unsigned letter allegedly from his sister. *Id.*, Exh. "DD" at 94, 102.

On April 29, 2020, Petitioner submitted a motion to reconsider his home arrest violation to the Arizona Court of Appeals. Amended Answer (Doc. 40), *State v. Huff*, No. 2CA-CR 20-0090-PR, Petr.'s Mot. to Reconsider Home Arrest Viol. and Revocation Suppl. Pet. for a Modification of Sent. (Ariz. Ct. App. Apr. 29, 2020) (Exh. "EE") (Doc. 40-2). Petitioner urged that he did not violate his home arrest conditions because the visitors came to visit Marina Romero and not him. *Id.*, Exh. "EE" at 5–7. Petitioner further alleged that his parole revocation violated his rights pursuant to the due process clause; the Fifth, Eighth, and Fourteenth Amendments; and the ex post facto clause. *Id.*, Exh. "EE" at 6. Petitioner also asserted that he did attempt to call the Tucson parole officers, but could not reach anyone because it was the Thanksgiving weekend. *Id.*, Exh. "EE" at 7. On May 13, 2020, the appellate court directed the Clerk of the Cochise County Superior Court to transmit the record and set a deadline for the State to file its response. *Id.*, *State v. Huff*, No. 2 CA-CR 2020-0090-PR, Order (Ariz. Ct. App. May 13, 2020) (Exh. "FF") (Doc. 40-2). On the same date, Petitioner filed a special action motion with the Arizona Court of Appeals, noting this Court's April 6, 2020 Order (Doc. 21) staying this matter pending exhaustion of Petitioner's state court remedies. Amended Answer (Doc. 40), *State v. Huff*, No. 2 CA-SA 2020-0030, Special Action Mot. for the Consideration of a Home Arrest Viol.; Pet. Drops All Requests for Modification of Sentence (Ariz. Ct. App. May 13, 2020) (Exh. "HH") (Doc. 40-2). On May 18, 2020, the appellate court directed Petitioner to "file a copy of the recent ruling from the Cochise County Superior Court[.]" *Id.*, *State v. Huff*, No. 2 CA-SA 2020-0030, Order at 37 (Ariz. Ct. App. May 18, 2020) (Exh. "II") (Doc. 40-2). On May 29, 2020, and in response to the court of appeal's order, Petitioner filed a second petition for special action in the appellate action. *Id.*, *State v. Huff*, No. 2 CA-SA 2020-0030, Petr.'s Pet. for "Special Action" Submission of Ct.'s Ruling and Home Arrest

Claims (Ariz. Ct. App. May 29, 2020) (Exh. "JJ") (Doc. 40-2). As part of this pleading, Petitioner included a document that references the instant habeas proceeding and presented argument regarding his home arrest violation and revocation. *Id.*, Exh. "JJ" at 42–50. On June 2, 2020, the appellate court declined to accept jurisdiction. *Id.*, *State v. Huff*, 2 CA-SA 2020-0030, Order (Ariz. Ct. App. June 2, 2020) (Exh. "KK") (Doc. 40-2).

On June 10, 2020, Petitioner filed another special action motion seeking review of the claims regarding his home arrest violation only. Amended Answer (Doc. 40), *State v. Huff*, No. 2 CA-SA 2020-0030, Petr.'s Special Action Mot. and Clarification of Dismissal of Modification of Sentence Request to Cont. Special Action Review of Home Arrest Viol. (Ariz. Ct. App. June 10, 2020) (Exh. "LL") (Doc. 40-2). On June 12, 2020, the appellate court construed Petitioner's filing as a motion for reconsideration and denied it. *Id.*, *State v. Huff*, No. 2 CA-SA 2020-0030, Order (Ariz. Ct. App. June 12, 2020) (Exh. "MM") (Doc. 40-2). Petitioner did not seek review in the Arizona Supreme Court, and on July 16, 2020, the appellate court issued its mandate. *Id.*, *State v. Huff*, No. 2 CA-SA 2020-0030, Mandate (Ariz. Ct. App. July 16, 2020) (Exh. "NN") (Doc. 40-2).

### C. The Instant Habeas Proceeding

On June 19, 2020, Petitioner filed his Amended Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody (Non-Death Penalty) (Doc. 32). Petitioner's Amended Petition (Doc. 32) asserts five (5) grounds for relief. First, Petitioner asserts that his Fifth Amendment due process rights were violated because he did not receive notification of the charges, the reasons why ABEC revoked his home arrest, and he was not allowed to confront his accusers. Amended Petition (Doc. 32) at 6. Petitioner further alleges that "the Board violated his constitutional right to a fair and unbiased proceeding" by allowing witnesses to use the revocation hearing "as a platform to exact revenge, and vindictiveness without reprimanding such behaviors." *Id.* Second, Petitioner asserts a violation of his Eighth Amendment protection against cruel and unusual punishment as a result of his home arrest violation and revocation. *Id.* at 7. Petitioner further alleges that he received "excessive and harsh penalties for a minor technical

violation which posed no threat or danger to public safety" and caused him "to be put in jeopardy twice for an offense[.]" *Id.* at 8. Third, Petitioner alleges "[h]arassment, intimidation, and threats through the media[.]" *Id.* at 9. Petitioner argues that his "home arrest violation is clearly a result of negative notoriety and advocates using the media to pressure the Board, Governor, and Legislature to revoke his release." Amended Petition (Doc. 32) at 9. Fourth, Petitioner argues that he received disparate and biased treatment during his home arrest revocation hearing in violation of the Equal Protection clause. *Id.* at 10. Finally, Petitioner asserts that he is actually innocent. *Id.* at 11. Petitioner alleges that "[t]he violation report of November 26, 2018 is in error, due to the failure of probation officers to adequately investigate the premises." *Id.* Petitioner urges that if the probation officers had entered the apartment, "they would have [found] a mother, father, and aunt all in the presence of a minor, who were visiting Marina Romero in her part of the apartment." *Id.*

## II.     STANDARD OF REVIEW

### *A.     In General*

The federal courts shall "entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody *in violation of the Constitution or laws of treaties of the United States*." 28 U.S.C. § 2254(a) (emphasis added). Moreover, a petition for habeas corpus by a person in state custody:

> shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim – (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). Correcting errors of state law is not the province of federal habeas corpus relief. *Estelle v. McGuire*,

502 U.S. 62, 67 (1991). Ultimately, "[t]he statute's design is to 'further the principles of comity, finality, and federalism.'" *Panetti v. Quarterman*, 551 U.S. 930, 945 (2007) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003)). Furthermore, this standard is difficult to meet and highly deferential "for evaluating state-court rulings, [and] . . . demands that state-court decisions be given the benefit of the doubt." *Pinholster*, 563 U.S. at 181 (citations and internal quotation marks omitted).

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 110 Stat. 1214, mandates the standards for federal habeas review. *See* 28 U.S.C. § 2254. The "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v. Titlow*, 571 U.S. 12, 19 (2013). Federal courts reviewing a petition for habeas corpus must "presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'" *Schriro v. Landrigan*, 550 U.S. 465, 473–74 (2007) (citing 28 U.S.C. § 2254(e)(1)). Moreover, on habeas review, the federal courts must consider whether the state court's determination was unreasonable, not merely incorrect. *Id.*, 550 U.S. at 473; *Gulbrandson v. Ryan*, 738 F.3d 976, 987 (9th Cir. 2013). Such a determination is unreasonable where a state court properly identifies the governing legal principles delineated by the Supreme Court, but when the court applies the principles to the facts before it, arrives at a different result. *See Harrington v. Richter*, 562 U.S. 86 (2011); *Williams v. Taylor*, 529 U.S. 362 (2000); *see also Casey v. Moore*, 386 F.3d 896, 905 (9th Cir. 2004). "AEDPA requires 'a state prisoner [to] show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement.'" *Burt*, 571 U.S. at 19–20 (quoting *Harrington*, 562 U.S. at 103) (alterations in original).

### B.     Exhaustion of State Remedies

Prior to application for a writ of habeas corpus, a person in state custody must exhaust all of the remedies available in the State courts. 28 U.S.C. § 2254(b)(1)(A). This "provides a simple and clear instruction to potential litigants: before you bring any claims

to federal court, be sure that you first have taken each one to state court." *Rose v. Lundy*, 455 U.S. 509, 520 (1982). As such, the exhaustion doctrine gives the State "the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (internal quotations omitted). Moreover, "[t]he exhaustion doctrine is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings." *Rose*, 455 U.S. at 518 (internal citations omitted). This upholds the doctrine of comity which "teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter." *Id.* (quoting *Darr v. Burford*, 339 U.S. 200, 204 (1950)).

Section 2254(c) provides that claims "shall not be deemed . . . exhausted" so long as the applicant "has the right under the law of the State to raise, by any available procedure the question presented." 28 U.S.C. § 2254(c). "[O]nce the federal claim has been fairly presented to the state courts, the exhaustion requirement is satisfied." *Picard v. Connor*, 404 U.S. 270, 275 (1971). The fair presentation requirement mandates that a state prisoner must alert the state court "to the presence of a federal claim" in his petition, simply labeling a claim "federal" or expecting the state court to read beyond the four corners of the petition is insufficient. *Baldwin v. Reese*, 541 U.S. 27, 31–33 (2004) (rejecting petitioner's assertion that his claim had been "fairly presented" because his brief in the state appeals court did not indicate that "he was complaining about a violation of federal law" and finding the justices' opportunity to read a lower court decision addressing the federal claims insufficient to support fair presentation); *Hiivala v. Wood*, 195 F.3d 1098 (9th Cir. 1999) (holding that petitioner failed to exhaust federal due process issue in state court because petitioner presented claim in state court only on state grounds). Furthermore, in order to "fairly present" one's claims, the prisoner must do so "in each appropriate state court." *Baldwin*, 541 U.S. at 29. "Generally, a petitioner satisfies the exhaustion requirement if he properly pursues a claim (1) throughout the entire direct appellate process

of the state, or (2) throughout one entire judicial postconviction process available in the state." *Casey v. Moore*, 386 F.3d 896, 916 (9th Cir. 2004) (quoting Liebman & Hertz, *Federal Habeas Corpus Practice and Procedure*, § 23.3b (9th ed. 1998)).

In Arizona, however, for non-capital cases "review need not be sought before the Arizona Supreme Court in order to exhaust state remedies." *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999); *see also Crowell v. Knowles*, 483 F.Supp.2d 925 (D. Ariz. 2007); *Moreno v. Gonzalez*, 192 Ariz. 131, 962 P.2d 205 (1998). Additionally, the Supreme Court has further interpreted § 2254(c) to recognize that once the state courts have ruled upon a claim, it is not necessary for an applicant to seek collateral relief for the same issues already decided upon direct review. *Castille v. Peoples*, 489 U.S. 346, 350 (1989).

### C. *Procedural Default*

#### 1. **In General**

"A habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion; there are no state remedies any longer 'available' to him." *Coleman v. Thompson*, 501 U.S. 722, 732 (1991). The Ninth Circuit Court of Appeals explained the difference between exhaustion and procedural default as follows:

> The exhaustion doctrine applies when the state court has never been presented with an opportunity to consider a petitioner's claims and that opportunity may still be available to the petitioner under state law. In contrast, the procedural default rule barring consideration of a federal claim applies only when a state court has been presented with the federal claim, but declined to reach the issue for procedural reasons, or if it is clear that the state court would hold the claim procedurally barred. *Franklin v. Johnson*, 290 F.3d 1223, 1230 (9th Cir. 2002) (internal quotation marks and citations omitted). Thus, in some circumstances, a petitioner's failure to exhaust a federal claim in state court may *cause* a procedural default. *See Sandgathe v. Maass*, 314 F.3d 371, 376 (9th Cir. 2002); *Beaty v. Stewart*, 303 F.3d 975, 987 (9th Cir. 2002) ("A claim is procedurally defaulted 'if the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'") (quoting *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)).

*Cassett v. Stewart*, 406 F.3d 614, 621 n. 5 (9th Cir. 2005).

Thus, a prisoner's habeas petition may be precluded from federal review due to procedural default in two ways. First, where a "petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Coleman*, 501 U.S. at 735 n.1 (citations omitted). In this circumstance, the federal court "must consider whether the claim could be pursued by any *presently available* state remedy." *Cassett*, 406 F.3d at 621 n.6 (quotations and citations omitted) (emphasis in original). Second, where the petitioner presented his claims to the state court, which denied relief based "on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman*, 501 U.S. at 728. Federal courts are prohibited from review in such cases because they have "no power to review a state law determination that is sufficient to support the judgment, [because] resolution of any independent federal ground for the decision could not affect the judgment and would therefore be advisory." *Id.* This is true whether the state law basis is substantive or procedural. *Id.* (citations omitted).

In Arizona, a petitioner's claim may be procedurally defaulted where he has waived his right to present his claim to the state court "at trial, on appeal or in any previous collateral proceeding." Ariz. R. Crim. P. 32.2(a)(3); *see also* Ariz. R. Crim. P. 33.2(a)(3). "If an asserted claim is of sufficient constitutional magnitude, the state must show that the defendant 'knowingly, voluntarily and intelligently' waived the claim." *Id.*, 2002 cmt. Neither Rule 32.2, 33.2 nor the Arizona Supreme Court has defined claims of "sufficient constitutional magnitude" requiring personal knowledge before waiver. *See id.*; *see also Stewart v. Smith*, 202 Ariz. 446, 46 P.3d 1067 (2002). The Ninth Circuit Court of Appeals recognized that this assessment "often involves a fact-intensive inquiry" and the "Arizona state courts are better suited to make these determinations." *Cassett*, 406 F.3d at 622.

. . .

. . .

- 12 -

## 2. Overcoming a Procedural Bar

Where a habeas petitioner's claims have been procedurally defaulted, a petitioner must show cause and actual prejudice to overcome the bar on federal review. *Teague v. Lane*, 489 U.S. 288, 298 (1989) (holding that failure to raise claims in state appellate proceeding barred federal habeas review unless petitioner demonstrated cause and prejudice); *see also Smith v. Murray*, 477 U.S. 527, 534 (1986) (recognizing "that a federal habeas court must evaluate appellate defaults under the same standards that apply when a defendant fails to preserve a claim at trial."). "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *see also Martinez-Villareal v. Lewis*, 80 F.3d 1301, 1305 (9th Cir. 1996) (petitioner failed to offer any cause "for procedurally defaulting his claims of ineffective assistance of counsel, [as such] there is no basis on which to address the merits of his claims."). Actual prejudice requires a habeas petitioner to "show not merely that the errors . . . created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Murray*, 477 U.S. at 494 (emphasis in original) (internal quotations omitted). Without a showing of both cause and prejudice, a habeas petitioner cannot overcome the procedural default and gain review by the federal courts. *Id.* at 494–95.

The Supreme Court has recognized, however, that "the cause and prejudice standard will be met in those cases where review of a state prisoner's claim is necessary to correct 'a fundamental miscarriage of justice.'" *Coleman v. Thompson*, 501 U.S. 748 (1991) (quoting *Engle v. Isaac*, 456 U.S. 107, 135 (1982)). "The fundamental miscarriage of justice exception is available 'only where the prisoner *supplements* his constitutional claim with a colorable showing of factual innocence.'" *Herrara v. Collins*, 506 U.S. 390, 404 (1993) (emphasis in original) (quoting *Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986)). Thus, "'actual innocence' is not itself a constitutional claim, but instead a gateway through

which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Herrara*, 506 U.S. at 404. Further, to demonstrate a fundamental miscarriage of justice, a habeas petitioner must "establish by clear and convincing evidence that but for the constitutional error, no reasonable factfinder would have found [him] guilty of the underlying offense." 28 U.S.C. § 2254(e)(2)(B).

## IV. ANALYSIS

### A. *Unexhausted Claims*

"[A] petitioner satisfies the exhaustion requirement if he properly pursues a claim (1) throughout the entire direct appellate process of the state, or (2) throughout one entire judicial postconviction process available in the state." *Casey v. Moore*, 386 F.3d 896, 916 (9th Cir. 2004) (quoting Liebman & Hertz, *Federal Habeas Corpus Practice and Procedure*, § 23.3b (9th ed. 1998)). In other words, "a petitioner must properly raise [a claim] on **every level** of direct review." *Id.* (emphasis added) (citing *Ortberg v. Moody*, 961 F.2d 135, 137 (9th Cir. 1992)); *see also Baldwin*, 541 U.S. at 29, 124 S. Ct. at 1349 (fair presentation requires a prisoner to raise his claims "in each appropriate state court"). Here, Petitioner failed to raise Grounds One and Two of his habeas claims in the proper manner and to the appropriate state court.

### 1. Ground One

In Ground One, Petitioner asserts that he was denied due process because he did not receive notification of the charges, the reasons why ABEC revoked his home arrest, and he was not allowed to confront his accusers. Amended Petition (Doc. 32) at 6.

The Supreme Court of the United States has recognized "that the revocation of parole is not part of a criminal prosecution[.]" *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972). In Arizona, challenges to ABEC decisions are properly brought as a special action. *See Long v. Arizona Bd. of Pardons and Parole*, 885 P.2d 178, 182–83 (Ariz. Ct. App. 1994) ("the proper vehicle [to challenge the termination of community release and return to prison confinement] . . . was . . . a special action."); *see also State v. Manning*, 692 P.2d

318, 319 (Ariz. Ct. App. 1984) ("A challenge to a parole revocation is not within the scope of amended rule 32[.]").[3] Rule 4(b), Arizona Special Actions Rules of Procedure, directs that a special action "brought in the Superior Court under this Rule shall be brought in the county in which the body or officer has or should have determined the matter to be reviewed, or, in the case of a state officer or body, either in Maricopa County or in the county of residence of the plaintiff[.]"

Here, Petitioner initially filed a PCR petition in the Cochise County Superior Court. Limited Answer (Doc. 15), Exh. "A." Upon the Rule 32 court's dismissal, Petitioner ostensibly filed a special action with the Arizona Court of Appeals. Amended Answer (Doc. 40), Exh. "U." Petitioner's special action in the appellate court primarily sought a modification of his sentence which he believed to be excessive and unconstitutional. *Id.*, Exh. "U" at 32. Regarding the November 26, 2018 home arrest violation, Plaintiff stated that "he takes accountability, even though he was in full compliance, he did not fully explain the parameters of his conditions to his fiancé, who allowed family members inside of his apartment with a minor, only to be discovered by the P.O.s." *Id.*, Exh. "U" at 35. The appellate court directed Petitioner to file the lower court ruling that he was challenging, which was a dismissal of a PCR petition. *See id.*, Exhs. "V," "W," "X." Accordingly, the appellate court declined jurisdiction of the special action and Petitioner did not seek further review. *See id.*, Exhs. "Y," "Z."

Subsequently, Petitioner filed a PCR Notice, as well as a motion for special action in his Cochise County Superior Court criminal case. Amended Answer (Doc. 40), Exh. "AA," "BB." The Rule 33 court treated the special action filing as a PCR petition and found it precluded. *Id.*, Exh. "CC." Petitioner next filed a petition for modification of his sentence pursuant to Rule 33.1 in the superior court case. *Id.*, Exh. "DD." Shortly after, Petitioner filed a motion to reconsider his home arrest violation to the Arizona Court of

---

[3] The *Manning* court observed that this was based, in part, on the fact that "the administration of parole is a function of the executive branch of government not the judicial branch."

Appeals. *Id.*, Exh. "EE." Petitioner followed this with a special action motion filed in the appellate court. Amended Answer (Doc. 40), Exh. "HH." The appellate court directed Petitioner to "file a copy of the recent ruling from the Cochise County Superior Court[.]" *Id.*, Exh. "II." In response to the appellate court's order, Petitioner filed a second petition for special action. *Id.*, Exh. "JJ." The appellate court declined to accept jurisdiction. *Id.*, Exh. "KK." Petitioner filed another special action motion seeking review of the claims regarding his home arrest violation only. *Id.*, Exh. "LL." The appellate court construed this filing as a motion for reconsideration and denied it. *Id.*, Exh. "MM." Petitioner did not seek review in the Arizona Supreme Court. *See id.*, Exh. "NN."

Petitioner failed to raise his challenge to the ABEC proceedings in a procedurally appropriate manner. Petitioner's ABEC hearing took place at the Arizona State Prison Complex ("ASPC") Eyman–Cook Unit in Florence, Arizona in Pinal County. Amended Answer (Doc. 40), Exhs. "P," "Q," "R." This is also where Petitioner resides. As such, Petitioner should have filed a special action in Pinal County or Maricopa County to challenge ABEC's revocation of his home arrest. Unlike the rules governing PCR proceedings, however, the rules for special action do not set specific time limitations. As such, although Petitioner's due process claim is unexhausted, it may not be procedurally defaulted. The Court will dismiss this claim.

### 2. Ground Two

Ground Two asserts that a violation of Petitioner's Eighth Amendment protection against cruel and unusual punishment and double jeopardy as a result of his home arrest violation and revocation. Amended Petition (Doc. 32) at 7. As discussed in Section IV.A.1., *supra*, challenges to ABEC decisions are properly brought as a special action. *See Long v. Arizona Bd. of Pardons and Parole*, 885 P.2d 178, 182–83 (Ariz. Ct. App. 1994). Furthermore, "[a] challenge to a parole revocation is not within the scope of [PCR proceedings]." *State v. Manning*, 692 P.2d 318, 319 (Ct. App. 1984). As with Ground One, Petitioner failed to raise his challenge to the ABEC proceedings in a procedurally

appropriate manner.[4]  Petitioner should have filed a special action challenging ABEC's revocation of his home arrest in either Pinal County or Maricopa County.  Because he failed to do so, Petitioner's Eighth Amendment claim is unexhausted, but as with his due process claim it may not be procedurally defaulted.  Accordingly, the Court will dismiss this claim.

### 3. Ground Four

Ground Four asserts that Petitioner received disparate and biased treatment during his home arrest revocation hearing in violation of the Equal Protection clause.  Amended Petition (Doc. 32) at 10.  As discussed in Sections IV.A.1. & 2., *supra*, challenges to ABEC decisions are properly brought as a special action.  *See Long v. Arizona Bd. of Pardons and Parole*, 885 P.2d 178, 182–83 (Ariz. Ct. App. 1994).  Furthermore, "[a] challenge to a parole revocation is not within the scope of [PCR proceedings]."  *State v. Manning*, 692 P.2d 318, 319 (Ct. App. 1984).  As with Ground One, Petitioner failed to raise his challenge to the ABEC proceedings in a procedurally appropriate manner.[5]  Petitioner should have filed a special action challenging ABEC's revocation of his home arrest in either Pinal County or Maricopa County.  Because he failed to do so, Petitioner's equal protection claim is unexhausted, but as with his due process claim it may not be procedurally defaulted.  Accordingly, the Court will dismiss this claim.

### B.    *Non-Cognizable Claims*

As discussed in Section II.A., *supra*, this Court shall "entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody *in violation of the Constitution or laws of*

---

[4] Arguably, judicial review is only available "to insure that the requirements of due process have been met and that the parole board has acted within the scope of its powers." *Stinson v. Arizona Bd. of Pardons & Paroles*, 725 P.2d 1094, 1095 (Ariz. 1986) (quoting *Cooper v. Arizona Bd. of Pardons & Paroles*, 717 P.2d 861, 863 (Ariz. 1986).  This Court makes no finding regarding the validity of Petitioner's claim, however, as that is the purview of the Arizona courts.

[5] Because judicial review is arguably only available "to insure that the requirements of due process have been met and that the parole board has acted within the scope of its powers[,]" this Court makes no finding regarding the validity of Petitioner's claim as this is a question for the Arizona courts.  *See Stinson v. Arizona Bd. of Pardons & Paroles*, 725 P.2d 1094, 1095 (Ariz. 1986) (quoting *Cooper v. Arizona Bd. of Pardons & Paroles*, 717 P.2d 861, 863 (Ariz. 1986).

- 17 -

*treaties of the United States.*" 28 U.S.C. § 2254(a) (emphasis added).  Federal habeas corpus relief is not for the purpose of correcting errors of state law.  *Estelle v. McGuire*, 502 U.S. 62, 67, 112 S. Ct. 475, 480, 116 L. Ed. 2d 385 (1991).

### 1. Ground Three

In Ground Three, Petitioner asserts that Petitioner alleges "[h]arassment, intimidation, and threats through the media[.]  Amended Petition (Doc. 32) at 9.  Petitioner argues that his "home arrest violation is clearly a result of negative notoriety and advocates using the media to pressure the Board, Governor, and Legislature to revoke his release."  *Id.*  This claim fails to state a constitutional violation and therefore not cognizable in habeas.  28 U.S.C. § 2254(a).

### 2. Ground Five

In Ground Five, Petitioner asserts that he is actually innocent.  Amended Petition (Doc. 32) at 11.

As discussed in Section II.C.2, *supra*, "'actual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits."  *Herrara v. Collins*, 506 U.S. 390, 404, 113 S. Ct. 853, 862, 122 L. Ed. 2d 203 (1993).  To demonstrate a fundamental miscarriage of justice, a habeas petitioner must "establish by clear and convincing evidence that but for the constitutional error, no reasonable factfinder would have found [him] guilty of the underlying offense."  28 U.S.C. § 2254(e)(2)(B).  Petitioner has not met this burden.  Therefore, any claim of actual innocence regarding Petitioner's parole violation is not cognizable on habeas review.

## V. CONCLUSION

Based upon the foregoing, the Court finds that Petitioner William Louis Huff's habeas claims are either unexhausted or not cognizable in habeas.  Because a question remains as to whether Petitioner can bring a special action in the proper venue, the Court will dismiss this action without prejudice.  The Court has also reviewed Petitioner's

pending motion Request[ing] Permission to Add Supplement to the Record, a Record of Recent Arizona Bd. of Exec. Clemency Hearings (Doc. 43) and Supplement to the Records for Additional Review (Doc. 45). In light of Petitioner's failure to properly exhaust his claims, these supplemental filings do not add anything to the record. As such, the Court will deny them as moot.

Accordingly, IT IS HEREBY ORDERED that:

1) Petitioner William Louis Huff's *pro se* Amended Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody (Non-Death Penalty) ("Amended Petition") (Doc. 32) is DISMISSED WITHOUT PREJUDICE;

2) Petitioner's motion Request[ing] Permission to Add Supplement to the Record, a Record of Recent Arizona Bd. of Exec. Clemency Hearings (Doc. 43) is DENIED AS MOOT;

3) Petitioner's Supplement to the Records for Additional Review (Doc. 45) is DENIED AS MOOT;

4) A certificate of appealability is DENIED, because reasonable jurists would not find the Court's ruling debatable. *See* 28 U.S.C. § 2253; and

5) The Clerk of the Court shall close its file in this matter.

Dated this 30th day of September, 2022.

_____
Eric J. Markovich
United States Magistrate Judge